IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LISA M.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | No. 18 C 5299 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff applied for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§416(i), 423, over seven years ago. (Administrative Record (R.) 179-85). She claimed that she became disabled as of September 13, 2013, due to arthritis, fibromyalgia, and chronic myofascial pain. (R. 220). At 5'5" and 280 pounds, she is also morbidly obese, with a BMI of 46.6. (R. 220). Over the next three years, the plaintiff's application as to the period between September 2013 and September 1, 2015, was denied at every level of administrative review: initial, reconsideration, administrative law judge (ALJ), and appeals council. It is the most recent ALJ's decision that is before the court for review. *See* 20 C.F.R. §§404.955; 404.981. Plaintiff asks the court to remand the Commissioner's decision, while the Commissioner seeks an order affirming the decision.

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an Opinion. Therefore, the plaintiff shall be listed using only their first name and the first initial of their last name.

Unfortunately, this case has seen significant delays. Plaintiff filed suit under 42 U.S.C. § 405(g) three years ago, on August 2, 2018, and the case was assigned to Judge Lee. The plaintiff and the defendant filed their opening and response briefs on November 15, 2018, and December 20, 2018. [Dkt. #16, #22]. Due to a government shutdown, the Chief Judge entered an order staying litigation in the case on December 26, 2018. [Dkt. #23]. A week later, Judge Lee struck the parties' briefs, instructing them to refile them once the shutdown was over. [Dkt. #24]. The shutdown continued and, on January 28, 2019, Judge Lee entered an order saying that, once the stay was lifted, he would "rule on the summary judgment motion as if the parties' summary judgment submissions had been refiled on the day the stay. [sic]". [Dkt. #26]. The stay was then lifted later that day. [Dkt. #27].

On February 2, 2019, the defendant responded to the previous two orders by refiling its response brief [Dkt. #29], and plaintiff then filed a reply brief on February 27, 2019. [Dkt. #30]. The defendant was given leave to file a sur-reply on March 8, 2019. [Dkt. #33, #34]. Nothing happened for another five months until August 22, 2019, when the Executive Committee reassigned the case to the newly appointed Judge Rowland.[Dkt. #35].

Another seven months passed, and the Chief Judge responded to the pandemic by entering a series of Covid-19 orders from March 19 through July 10, 2020, which extended any deadlines in civil cases for a total of 77 days. [Dkt. ##37-42]. After another two months passed, on September 28, 2020, the Executive Committee reassigned the case a second time, to the new appointed Judge Valderrama. [Dkt. # 43]. On December 28, 2020, Judge Valderrama advised the parties that he would issue a ruling on the parties' briefs by mail. [Dkt. #45]. Six months later, the judge asked for a status report from the parties as to whether they consented to proceed before a magistrate judge.

[Dkt. #46]. The parties then consented to my jurisdiction pursuant to 28 U.S.C. § 636(c) on July 15, 2021. [Dkt. #47, #48].

## I.

### A.

Plaintiff was born on June 9, 1963, and so was 54 years old at the time of the ALJ's decision on September 28, 2017. (R. 179). She has a good work record, working fairly steadily – aside from one or two years – from 1979 through 2013. (R. 214-15). She has a high school education and worked in banking her whole life. (R. 221). But, she was involved in a motor vehicle accident on March 8, 2011 and later developed fibromyalgia and eventually quit her job in September 2013. (R. 1094).

The record in this case is 1486 pages long and, inexplicably, was filed in *twenty-five* separate installments, making review more tedious than usual and providing perhaps at least a partial explanation for the three-plus years it has languished in federal district court. As is often the case, very little in that large record has anything to do with whether plaintiff can work. In fact, the plaintiff directs the court to just two of those 1486 pages in support of her claim. [Dkt. #16-1, at 3;#30, at 3].

Following her motor vehicle accident in March 2011, plaintiff sought treatment with Dr. Lichtenberg for complaints due to fibromyalgia and osteoarthritis. On December 18, 2013, she reported she had stopped using Plaquenil on her own because of possible adverse interactions with other drugs. (R. 1096). Musculoskeletal examination was normal: normal gait and station, full range of motion of the major joints and the spine, and no edema or synovitis. (R. 1097). The only exceptions were some tender points and slightly diminished grip. (R. 1097). The doctor noted

3

moderate osteoarthritis of the hands. (R. 1097). Neurological examination was normal: normal reflexes, sensation, and motor strength of 5/5 throughout. (R. 1097). Dr. Lichtenberg noted a history of asthma and hypothyroidism. (R. 1097). Plaintiff's prescriptions for Gabapentin, Prednisone, and Synthroid were contined. (R. 1097).

Plaintiff saw Dr. Singh on May 29, 2014, with complaints of neck, shoulder, chest, and back pain (R. R. 2F/2). Claimant reported being involved in a motor vehicle accident in March 2011 (R. 2F/2). Musculoskeletal examination demonstrated normal motor strength and tone with good range of motion in the shoulders, elbows, knees, ankles, and feet . There was no synovitis, warmth, or erythema (R. 437). But, again, there were multiple tender points. (R. 438). Gait and station were normal. (R. 438). Examination of plaintiff's hands revealed bony hypertrophy throughout the proximal interphalangeal joints. There was reduced range of motion in the right pinky and in all digits of the left hand. (R. 437). Dr. Singh advised plaintiff to continue taking Gabapentin and start using Cymbalta and Lidoderm patch. (R. 438). She was also taking Aleve (R. 439). The doctor also noted a history of hypertension, hyperlipidemia, status post thyroidectomy, and hypothyroidism treated with Lisinopril, Zocor, Prilosec, and Synthroid (R. 439).

Plaintiff followed up with Dr. Lichtenberg on September 5, 2014, for fibromyalgia and osteoarthritis (R. 1106). At that time, she reported neck; hand, and diffuse muscle pain (R. 1106). There was no evidence of numbness, weakness, gait abnormality, joint effusion, or morning stiffness. (R. 1106). Plaintiff was taking Aleve, Synthroid, Prednisone, Gabapentin, and using an Albuterol inhaler. (R. 11006-07). Once again, musculoskeletal exam was essentially normal: normal gait and station, full range of motion of all major joints, and no edema or synovitis. (R. 1108). But, again, chronic osteoarthritis of her hands was noted, with bony deformities, and some

fibromyalgia tender points (R. 1108). There were no neurological deficits: reflexes, sensation, and motor strength were all normal. (R. 1108). Dr. Lichtenberg's diagnosis continued to be fibromyalgia and osteoarthritis, and he advised a trial of Plaquenil and continued exercises (R. 1108).

Plaintiff treated with Dr. Fackler-Chapman throughout 2014 and 2015. In the main, examinations were normal aside from complaints of muscle pain in one or two joints. Plaintiff had no complaints about the arthritis in her hands. (R. 474-510). Most recently, Dr. Fackler-Chapman examined the plaintiff on April 24, 2015, and noted obesity with poor exercising habits. (R. 471). Plaintiff complained of muscle aches and joint stiffness in one or two joints (R. 472). She was 65 inches tall and weighed 283 pounds. (R. 472). Her musculoskeletal evaluation showed tenderness around the SI joints, but normal gait and station (R. 472). Neurological exam was normal. (R. 472). Dr. Fackler-Chapman diagnosed sacroiliac strain and prescribed Gabapentin and Flexeril (R. 473).

Plaintiff underwent physical therapy from May to October in 2015. (R. 1111-95). By June 18, 2015, pain level was down to 2/10. (R. 1126). Throughout most of the course, plaintiff complained of pain in her neck, chest, and back, but not in ger hands. (R. 1114, 1119, 1122, 1126, 1137, 1143, 1148, 1161). Her first mention of any problem with her hands was on August 26, 2015. (R. 1161, 1164). At that time she reported that they "were hurting more lately" and she felt like she wasn't able to hold onto items as well as before. (R. 1168). Plaintiff complained about issues with her hands thereafter. (R. 1170, 1177, 1183, 1188, 1196).

On July 7, 2016, x-rays of plaintiff's right hand revealed advanced osteoarthritic changes of the proximal interphalangeal joints of the second and third fingers; fusion of the proximal interphalangeal joint of the fifth finger; and no evidence of inflammatory type of arthritis. (R. 1217). Dr. Giangreco examined plaintiff that day and noted she was taking Gabapentin with only minimal

5

relief. (R. 1218). She was not doing her daily stretching or strengthening exercises. (R. 1218). She complained of bilateral proximal interphalangeal joints and distal interphalangeal joints pain (R. 1218). She was on Hydroxychloroquine, Naproxen (Aleve), and Diflunisal, but could not afford Lyrica or Cymbalta, which had been recommended. (R. 1218). Examination revealed no weakness or gait abnormality. (R. 1219). Range of motion was normal throughout with the exception of the hands and crepitus in the knees. (R. 1220).

### B.

After an administrative hearing at which plaintiff, represented by counsel, testified along with a vocational expert, the ALJ found that plaintiff was not disabled under the Social Security Act prior to August 26, 2015. (R. 16-24). The ALJ determined the plaintiff had the following severe impairments: fibromyalgia, asthma, and obesity. (R. 18). The ALJ found that plaintiff's depression resulted in no more than mild limitations and was non severe. (R. 18-19). The ALJ then determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, focusing on Listings 1.02 (dysfunction of a major joint), 3.03 (asthma), and 14.09 (inflammatory arthritis). (R. 19-20).

The ALJ then determined that plaintiff could perform sedentary work, but only frquent, as opposed to constant, reaching handling, and fingering. (R. 20). The ALJ then reviewed plaintiff's allegations and found that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported prior to August 26, 2015, for reasons explained in this decision." (R. 20). The ALJ summarized the medical evidence, noting generally

normal findings aside from some tender points and bony hypertrophy in her hands. (R. 21-22). But, he also noted that in August of 2015, the symptoms in her hands increased and July 2016 x-rays revealed advanced osteoarthritis. (R. 22-23). This reduced her capacity for handling and fingering from frequent to occasional. (R. 23).

The ALJ assigned great weight to the opinions of the state disability agency physicians who reviewed the medical record as they were consistent with that record. (R. 22). The ALJ considered the vocational expert's testimony, finding that prior to August 26, 2015, plaintiff remained capable of performing her past sedentary and other sedentary work such as information clerk (100,200 jobs in the national economy. (R. 23). After August 26, 2015, however, the Medical-Vocational Guidelines, 201.14, directed a finding of "disabled." (R. 24). Accordingly, ALJ found plaintiff not disabled prior to August 26, 2015, but disabled thereafter. (R. 39).

## II.

If the ALJ's decision is supported by substantial evidence, the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014). To determine whether substantial evidence exists, the court re]views the record as a whole, *Biestek v. Berryhill*, – U.S. –, –, 139 S. Ct. 1148, 1154 (2019), but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses. *Beardsley*, 758 F.3d at 837. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits," the court must defer to the Commissioner's resolution of

7

that conflict. *Binion v. Chater,* 108 F.3d 780, 782 (7th Cir.1997); *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017)

The substantial evidence standard is a low hurdle to negotiate, *Biestek* , 139 S. Ct. at 1154, but, in the Seventh Circuit, the ALJ also has an obligation to build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *O'Connor–Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir.2010). The court has to be able to trace the path of the ALJ's reasoning from evidence to conclusion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). Even if the court agrees with the ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build that logical bridge. *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)(". . . we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."); *but see, e.g., Riley v. City of Kokomo*, 909 F.3d 182, 188 (7th Cir. 2018)("But we need not address either of those issues here because, even if [plaintiff] were correct on both counts, we may affirm on any basis appearing in the record, ...."); *Steimel v. Wernert*, 823 F.3d 902, 917 (7th Cir. 2016)("We have serious reservations about this decision, which strikes us as too sweeping. Nonetheless, we may affirm on any basis that fairly appears in the record."); *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012)("[District court] did not properly allocate the burden of proof on the causation element between the parties, ... No matter, because we may affirm on any basis that appears in the record."). The subjectivity of the requirement – one reader might require a far sturdier bridge than another –

makes it difficult for ALJs hoping to write acceptable decisions that stand up to judicial scrutiny when challenged. But, at the same time, the Seventh Circuit has also called this requirement "lax." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008).[2] "If a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough." *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985). Given the record in this case, the ALJ has done more than enough here.

---

[2] Indeed, prior to *Sarchet's* "logical bridge" language, the court generally employed the phrase "minimal articulation" in describing an ALJ's responsibility to address evidence. *Zalewski v. Heckler*, 760 F.2d 160, 166 (7th Cir. 1985)(collecting cases). The court's focus was on whether an ALJ's opinion assured the reviewing court that he or she had considered all significant evidence of disability. In *Zblewski v. Schweiker*, 732 F.2d 75 (7th Cir. 1984), for example, the court "emphasize[d] that [it] d[id] not require a written evaluation of every piece of testimony and evidence submitted" but only "a minimal level of articulation of the ALJ's assessment of the evidence . . . in cases in which considerable evidence is presented to counter the agency's position." *Zblewski*, 732 F.2d at 79. In *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985), the court rejected a plaintiff's argument that an ALJ failed to adequately discuss his complaints of pain and was more explicit about how far ALJs had to go to explain their conclusions:

> We do not have the fetish about findings that [the plaintff] attributes to us. The court review judgments, not opinions. The statute requires us to review the quality of the evidence, which must be "substantial," not the quality of the ALJ's literary skills. The ALJs work under great burdens. Their supervisors urge them to work quickly. When they slow down to write better opinions, that holds up the queue and prevents deserving people from receiving benefits. When they process cases quickly, they necessarily take less time on opinions. When a court remands a case with an order to write a better opinion, it clogs the queue in two ways—first because the new hearing on remand takes time, second because it sends the signal that ALJs should write more in each case (and thus hear fewer cases).
>
> The ALJ's opinion is important not in its own right but because it tells us whether the ALJ has considered all the evidence, as the statute requires him to do. . . . This court insists that the finder of fact explain why he rejects uncontradicted evidence. One inference from a silent opinion is that the ALJ did not reject the evidence but simply forgot it or thought it irrelevant. That is the reason the ALJ must mention and discuss, however briefly, uncontradicted evidence that supports the claim for benefits.

*Stephens*, 766 F.2d at 287 (citations omitted). Much more recently, the Seventh Circuit explained that "the 'logical bridge' language in our caselaw is descriptive but does not alter the applicable substantial-evidence standard." *Brumbaugh v. Saul*, 850 F. App'x 973, 977 (7th Cir. 2021).

### III.

In a rather breezy four-page brief that cites just a single page of the 1150-page medical record, the plaintiff makes two arguments for overturning the ALJ's decision denying her benefits. First, she argues that the ALJ was mistaken in finding that her depression was not a severe impairment. [Dkt. #16-1, at 3-4]. Second, she contends that the ALJ failed to adequately explain why he gave great weight to the opinions from the state agency reviewing physicians. [Dkt. #16-1, at 4]. Any other arguments she might have made are deemed waived. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013)(arguments not raised in district court are waived); *Skarbek v. Barnhart*, 390 F.3d 500, 505 (7th Cir. 2004).

### A.

We begin with plaintiff's argument about depression, which the ALJ found was not a severe impairment. That finding is certainly supported by substantial evidence, a the very least. Indeed, there appears to be no treatment notes for depression or any mention of it as impinging on plaintiff's ability to work; plaintiff's brief certainly does not point to any. Moreover, plaintiff's counsel made no mention of treatment for depression or any medical evidence suggesting it caused plaintiff any limitations in his brief to the ALJ. (R. 318-22).

Plaintiff relies exclusively on a report from a March 2012 neuropsychological evaluation – well over a year before her alleged onset date – where she told the doctor that "because of her depression, [she] shuts down, cries more easily, and finds it harder to hide her anger and smooth things over."[Dkt. #16-1, at 3, citing (R. 616)]. At that same visit, however, mental examination revealed that plaintiff was "consistently alert and readily responsive", speech was of normal rate and rhythm, affect and mood were normal, thought process and content were normal. (R. 617). Even

testing of emotional functioning based on plaintiff's own self-reports demonstrated no more than "minimal symptomatology" in terms of anxiety and depression. (R. 619). Diagnostic impression was no more than mild affective disturbance. (R. 619).

As the plaintiff's brief puts it, this "evaluation dealt directly with how the [plaintiff's] depression affected her in work situations." [Dkt. #16-1, at 3-4]. And the answer was, it barely affected her at all. The medical evidence demonstrates no more than a mild or minimal impairment, with little effect on plaintiff's functioning, which is exactly what the ALJ determined. *See Thomas v. Colvin*, 826 F.3d 953, 960 (7th Cir. 2016)(a severe impairment is one that "significantly limit[s] the claimant's ability to perform basic work activities, including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling.").

The plaintiff bears the burden to prove she is disabled by producing medical evidence. *Gedatus v. Saul*, 994 F.3d 893, 904 (7th Cir. 2021); *Castile v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010); *Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008). That means that the claimant bears the risk of uncertainty. *Id. See also Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004). After all, it "is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so." *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5 (1987). *See also* 20 C.F.R. § 404.1512(c) ( "You must provide medical evidence showing that you have an impairment and how severe it is during the time you say that you were disabled."). It's not up to the court to sift through the record without direction from counsel in the hopes of finding something to support counsel's arguments. *Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 537 (7th Cir. 1992) (holding that "compelling the court to take up a burdensome and fruitless scavenger hunt...is a drain on its time and Resources"); *see also Sommerfield v. City of Chicago*, 863 F.3d 645

(7th Cir. 2017); *Juanita H. v. Kijakazi*, 2021 WL 3054814, at *6 (N.D. Ill. 2021); *Megan G. v. Saul*, 2021 WL 2105038, at *4 (N.D. Ill. 2021); *Shaun R. v. Saul*, 2019 WL 6834664, at *5 (N.D. Ill. 2019). Here, where the plaintiff has counsel at the hearing and thereafter, she is presumed to have made her best case for benefits. *Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017). When that "best case" is made by relying exclusively on a single reference to plaintiff's reported symptoms in a 1150- page medical record – especially where the medical assessment of those symptoms rates them as minimal, at worst – it is clear than the ALJ's opinion should be affirmed.

## B.

Plaintiff's other argument is that the ALJ failed to explain why he assigned great weight to the opinions from the state agency reviewing physicians -- in other words, a "logical bridge" argument. The law is well-settled that "[t]he ALJ may properly rely upon the opinion of these medical experts." *Scott v. Sullivan*, 898 F.2d 519, 524 (7th Cir.1990); *see also Anders v. Saul*, – Fed. App'x – , –, 2021 WL 2396236, at *4 (7th Cir. 2021)(proper to rely on state agency doctors because they are "highly qualified and experts in Social Security disability evaluation."); *Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004)("The fact that these physicians reviewed the entire record strengthens the weight of their conclusions."); *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004); SSR 96-6p 1996 WL 374180, *3 ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of examining sources."). As the ALJ said, the opinions are consistent with the medical evidence, which, in the main, revealed normal or mild findings. It is not clear, given the record, what more of an explanation is needed. Consistency with the medical record is the hallmark of a persuasive medical opinion. *Loveless v. Colvin*, 810 F.3d

502, 507 (7th Cir. 2016); 20 CFR 404.1527(c)(4)("Consistency. Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). That is explanation enough. Moreover, there is no contrary medical opinion in the record. *See Thomas v. Colvin*, 826 F.3d 953, 959 (7th Cir. 2016).

## C.

Finally, it should be noted that plaintiff raised a new argument in her reply brief, calling into question the ALJ basing his finding that plaintiff became disabled as of August 26, 2015 on a report that she was "dropping things." [Dkt. #30, at 3]. Plaintiff asserts that there was an earlier mention of her dropping things in the record, citing a report from May 29, 2014. [Dkt. #30, at 3, citing (R. 436)]. We address this contention to deter counsel from employing this tactic in the future. Arguments raised for the first time in a reply brief are waived. *McCarty v. Menards, Inc.*, 927 F.3d 468, 472, n. 2 (7th Cir. 2019); *Frazee v. Berryhill*, 733 F. App'x 831, 834 (7th Cir. 2018); *United States v. Kennedy*, 726 F.3d 968, 974 n. 3 (7th Cir.2013); *Nationwide Ins. Co. v. Cent. Laborers' Pension Fund*, 704 F.3d 522, 527 (7th Cir.2013). It is a forbidden tactic that is everywhere disallowed. The doctrine is deemed necessary to prevent "sandbagging." *Harris v. United States*, 13 F.4th 623, (7th Cir. 2021); *Hot Stuff Foods v. Houston Cas. Co.*, 771 F.3d 1071 n. 5 (8th Cir. 2014); *Hussein v. Osh Kosh Motor Truck Co.*. 816 F.2d 348, 360 (7th Cir. 1987); *Horvath v. Apria Healthcare, LLC*, 2019 WL 5725378, at *2 (N.D. Ill. 2019)("A reply brief is for replying" -- not for sandbagging.").

But if an attorney is intent on "sandbagging," it is better to have sand in the bag. Actually, as the ALJ indicated, the report the ALJ cited said that plaintiff said her "wrists/hands hurting *more* lately and I feel like I am not able to hold onto items *as well*." (R. 1161)(Emphasis supplied). The

13

point the ALJ was making, which was supported by the evidence -- including plaintiff's own description of her symptoms -- was that her hands had gotten worse about that time. Indeed, plaintiff had no complaints about her hand for several months prior to August 26, 2015. (R. 1114, 1119, 1122, 1126, 1137, 1143, 1148, 1161, 1164, 1168, 1170, 1177, 1183, 1188, 1196). It was one piece of evidence among others that the ALJ relied on to estimate an onset date for plaintiff's disability.

## CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment [Dkt. #28] is granted and the ALJ's decision is affirmed.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 10/14/21